IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ERIC A. GRUBB, #K96055, | ) |
| | ) |
|                 Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 3:14-cv-01425-MJR |
| | ) |
| SANDRA FUNK and | ) |
| TOM MOORE, | ) |
| | ) |
|                 Defendants. | ) |

**MEMORANDUM AND ORDER**

**REAGAN, Chief District Judge:**

Plaintiff Eric Grubb is currently incarcerated at the Menard Correctional Center in Menard, Illinois. (Doc. 13 at 1.) Proceeding *pro se*, Grubb has filed an amended complaint pursuant to 42 U.S.C. § 1983 against Sandra Funk, the Illinois Department of Corrections' Transfer Coordinator, and Tom Moore, Grubb's counselor at Western Illinois Correctional Center. (*Id.*) Grubb alleges that Moore and Funk improperly transferred him from Western to Menard despite the fact that inmates at Menard pose a risk to his safety. (*Id.* at 5.) Grubb seeks an injunction transferring him out of Menard, as well as monetary damages. (*Id.* at 6.)

This matter is now before the Court for a preliminary review of Grubb's amended complaint pursuant to 28 U.S.C. § 1915A. Under 28 U.S.C. § 1915A, the Court shall review a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a government entity." During this preliminary review, the court "shall identify cognizable claims or dismiss the complaint, or any portion of the complaint," if the complaint "is frivolous, malicious, or fails to state a claim on which relief may be granted" or if it "seeks monetary relief from a defendant who is immune from such relief."

**Background**

On December 30, 2014, Grubb filed his initial complaint in this case. (Doc. 1.) His initial complaint named Sandra Funk, the Transfer Coordinator for the Illinois Department of Corrections, and Jeff Korte, the Warden of Western Illinois Correctional Center. (*Id.*) Grubb claimed that he was transferred from Western to Menard Correctional Center in December 2014, and that his transfer was improper because Grubb would be exposed to three enemies at Menard. (*Id.* at 5.) On January 22, 2015, the Court dismissed Grubb's initial complaint with leave to amend, as his initial complaint did not mention Korte at all, and the limited allegations against Funk at best raised a negligence claim against her, rather than a claim that she acted with deliberate indifference related to Grubb's transfer to Menard. (Doc. 10 at 5-6.)

On February 5, 2015, Grubb filed an amended complaint, this time naming Tom Moore, his correctional counselor at Western, and Funk. (Doc. 13 at 1.) According to his amended complaint, on November 14, 2014, Moore told Grubb that he was being transferred to Menard due to a "disciplinary action." (*Id.* at 5.) At that time, Grubb told Moore about three enemies on his "Keep Separate From" list that were housed at Menard. (*Id.*) Moore told Grubb he would look into the matter, and later advised Grubb that he put him in for a transfer to Stateville Correctional Center instead of Menard. (*Id.*) On December 1, 2014, Moore told Grubb that he would not be transferred to Stateville; instead, Funk changed his orders back to Menard. (*Id.*)

On December 3, 2014, Grubb was transferred to Menard. (*Id.*) He was first housed in cell N2.638, but one week into his stay at Menard, he was transferred to Gallery 4, N2 segregation. (*Id.*) He alleges that one of the enemies on his "Keep Separate From" list is housed at Menard in Gallery 7, that he "see[s] this person every day," and that this individual is a

"highly ranked gang member" who can "send his gang members at me." (*Id*.) Given these issues, Grubb asserts that his "life is in danger." (*Id.*) Per an exhibit attached to Grubb's complaint, Grubb is presently in segregation and will remain there until May 2015. (*Id*. at 8.)

## Discussion

Construed liberally, Grubb's complaint raises a single claim: that Moore and Funk failed to protect him from dangerous conditions of confinement at Menard. (*Id.* at 5.) Grubb is correct that prison officials have a duty – stemming from the Eighth Amendment – to "take reasonable steps to insure the safety of inmates, including harm done by one inmate to another." *Pope v. Shafer*, 86 F.3d 90, 91-92 (7th Cir. 1996). To state a failure to protect claim under the Eighth Amendment, an inmate must allege that an official acted with deliberate indifference to an excessive risk to the inmate's safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

A failure to protect claim includes objective and subjective pleading requirements. *Pope*, 86 F.3d at 92. Under the objective prong, the inmate must lay out "conditions which objectively pose a substantial risk of serious harm." *Id.* A "substantial risk" of harm exists when the risk to an inmate is so great that it is "almost certain to materialize if nothing is done," as it would if a party with a heightened risk, propensity, or probability of attacking the inmate has "unsupervised access to his target prey." *Brown v. Budz*, 398 F.3d 904, 911 (7th Cir. 2005). Under the subjective prong, the inmate must allege that "the official knew of the risk (or a high probability of the risk) and did nothing." *Pope*, 86 F.3d at 92. Critically, allegations that an official "*should* know of a risk but does not" or that an official "merely failed to act reasonably" are insufficient, as these allegations are more akin to negligence rather than deliberate indifference. *Id*.

Grubb's allegations fail both the objective and subjective prongs. Concerning the presence of an objective risk of serious harm, Grubb claims that he has enemies at Menard, one of whom he can see daily. (Doc. 13 at 5.) He also claims that this enemy could send other inmates "at [him]." (*Id*.) However, Grubb does not allege that these enemies have attacked him or threatened him, he does not lay out any background as to why these individuals constitute a threat to his safety, and he does not allege that any of these individuals have unsupervised access to him. *See Brown*, 398 F.3d at 911. In addition, Grubb has attached an exhibit to his complaint indicating that he is presently in segregation until May 2015, and that there is "some time" for prison officials to work on Grubb's concerns given his placement in segregation. (Doc. 13 at 8.) This exhibit casts doubt on whether Grubb is in any danger – substantial or otherwise. Taking all of Grubb's allegations together, Grubb's complaint does not allege the existence of a substantial threat to his safety by way of his current conditions, meaning that his claim must be dismissed.

Grubb's allegations also fail to allege deliberate indifference on the part of Funk and Moore. As to Moore, Grubb claims that he repeatedly attempted to have Grubb placed at Stateville, but was unsuccessful. This suggests reasonable efforts by Moore to respond to Grubb's concerns, rather than deliberate indifference to those concerns. Without other allegations indicating that Moore's response was unreasonable or that Moore should have done more, Grubb has not alleged deliberate indifference by Moore, and his claim against Moore must be dismissed. *See, e.g., Mays v. Springborn*, 575 F.3d 643, 648 (7th Cir. 2009) (reasonable response by officials "to the problem precludes a successful showing of deliberate indifference"); *Perkins v. Lawson*, 312 F.3d 872, 875-76 (7th Cir. 2002) (no deliberate indifference where officials "took steps" to remedy the issue); *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997) (affirming dismissal because allegations indicated that defendants took "reasonable measures").

Grubb's allegations against Funk also fail to allege deliberate indifference. Grubb does not claim that Funk knew of the risks at Menard; rather, he claims that she should have known of the risks by virtue of her position as coordinator, yet placed him at Menard anyway. He further pleads, in his complaint, that he did not send a letter to Funk concerning the transfer. (Doc. 13 at 5.) Allegations that a party "should have known" of a risk but did not are insufficient to put forth an Eighth Amendment claim. *See, e.g., Pope*, 86 F.3d at 92 (allegation that an official "*should* know of a risk but does not" is a negligence claim, which is not actionable under § 1983); *Billman v. Indiana Dep't of Corrections*, 56 F.3d 785, 788 (7th Cir. 1995) (no constitutional claim if official does not know about a risk, "even if they should have known about the risk, that is, even if they were negligent" or "grossly negligent" in "failing to know"). Because Grubb's allegations sound like negligence at best, his claim against Funk must be dismissed.

Given the defects in Grubb's complaint and the fact that this is Grubb's second attempt at drafting a viable pleading, his complaint could be dismissed with prejudice and his case closed. However, the Court will provide Grubb with one additional opportunity to amend his complaint concerning his placement at Menard. If Grubb decides to file another amended complaint, he should label it "Second Amended Complaint" and file it under this matter's case number. In making out his Second Amended Complaint, Grubb needs to clearly allege those facts showing that his conditions of confinement at Menard pose substantial risks to his safety. He must also allege that the parties he names in his next complaint – whether individuals employed at Menard, Western, or elsewhere – knew of those risks and were deliberately indifferent to them.

One closing note is in order concerning Grubb's administrative remedies. Before an inmate can bring a § 1983 claim, he must exhaust those administrative remedies that are

available to him, first at the prison and then via the Administrative Review Board. *See Ford v. Johnson*, 362 F.3d 395, 400 (7th Cir. 2004). Grubb has included confusing allegations in his amended complaint concerning his exhaustion of remedies. He first claims that any claim concerning his conditions of confinement is "non-grievable," and that he filed no grievance. (Doc. 13 at 4-5.) He next states that he has "filed a [grievance]" at Menard concerning his purportedly dangerous conditions of confinement, but that he has not heard back concerning that grievance. (*Id.* at 5.) Grubb goes on to attach an exhibit to his amended complaint, which states that Menard officials were "working on" the situation related to his enemies at Menard up to three weeks before he filed his amended complaint, and that Grubb was presently safe until May 2015 given his placement in disciplinary segregation. (*Id.* at 8.) Finally, a month after filing his amended complaint, Grubb filed an affidavit with the Court, indicating that he initiated a complaint with the Administrative Review Board in January 2015 and followed up with the Board in February 2015. (Doc. 15 at 2.) While Grubb is under no obligation to plead exhaustion in his complaint, he is cautioned that, if a grievance is actively being processed by Menard, then that grievance must be completed before Grubb can bring his § 1983 claim.

## Disposition

**IT IS HEREBY ORDERED** that Plaintiff's first amended complaint (Doc. 13) is **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that, should Plaintiff wish to proceed with this case, Plaintiff shall file his Second Amended Complaint within 35 days of the entry of this order (on or before May 27, 2015). He should label the form Second Amended Complaint, and he should use the case number for this action. In drafting his amended complaint, Plaintiff should include those facts that show that his current conditions pose substantial risks to his safety.

Plaintiff should also include facts demonstrating that the parties he names in his next complaint – whether they be individuals employed at Menard Correctional Center, Western Illinois Correctional Center, or elsewhere – knew of those risks and acted with deliberate indifference towards them.

An amended complaint supersedes and replaces all previous complaints, rendering previous complaints void. *See Flannery v. Recording Indus. Ass'n of Am.,* 354 F.3d 632, 638 n.1 (7th Cir. 2004). The Court will not accept piecemeal amendments to a complaint. Thus, the Second Amended Complaint must stand on its own, without reference to any other pleading. Should the Second Amended Complaint not conform to these requirements, it shall be stricken. Plaintiff must also re-file any exhibits he wishes the Court to consider along with the amended complaint. Failure to file a Second Amended Complaint shall result in the dismissal of this action with prejudice. Such dismissal shall count as one of Plaintiff's three allotted "strikes" within the meaning of 28 U.S.C. § 1915(g). No service shall be ordered on any Defendant until after the Court completes its § 1915A review of the Second Amended Complaint.

In order to assist Plaintiff in preparing his amended complaint, the **CLERK** is **DIRECTED** to mail Plaintiff a blank civil rights complaint form.

**IT IS FURTHER ORDERED** that Plaintiff's motions for Recruitment of Counsel (Doc. 3 & 14) are held in **ABEYANCE** pending receipt of a Second Amended Complaint.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Status and Motion to File a *Bivens* Suit (Doc. 16) are **DENIED** as moot in light of the Court's instant order.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Accept Petitioner's Affidavit (Doc. 15) is **DENIED** as moot in light of the Court's instant order. The Court has considered Plaintiff's motion and affidavit in this ruling, as indicated above.

Plaintiff is **ADVISED** that his obligation to pay the filing fee for this action as incurred at the time the action was filed. Accordingly, the filing fee of $350.00 remains due and payable, regardless of whether Plaintiff elects to file a Second Amended Complaint. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockish*, 133 F.3d 464, 467 (7th Cir. 1998).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: April 22, 2015**

<u>s/ MICHAEL J. REAGAN</u>
**Chief Judge Michael J. Reagan**
**United States District Judge**